### N. PENDLETON *against* EATON and others.

Where both parties are equally innocent, and both are endeavouring to avoid a loss caused by another, *costs* will not be awarded to either party as against the other.

October 24.

THE bill was filed in *October,* 1810, by the plaintiff, a mortgagee, to compel the mortgagors to come to an account, and pay the plaintiff the amount due on the mortgage, and redeem the same, or be foreclosed of all equity of redemption.

The mortgage, dated the 17th of *February,* 1804, for a tract of land in *Greene* county, was executed by *Amos Eaton* and *Abel Eaton,* defendants, to the plaintiff, to secure the payment of 13,500 dollars, being the amount of the purchase money of the same land conveyed by the plaintiff to them, and payable in three equal instalments, at

five, six, and seven years, and as further security, they executed a judgment bond to the plaintiff, on which judgment was entered up the 18th of *February*, 1814, and *Abel E.* also, as additional security, executed a mortgage to the plaintiff on his farm in *Columbia* county, but which was afterwards released, on receiving the interest due to the 1st of *May*, 1806, and the bond and mortgage of *M. Dorr*, the purchaser of the farm. The bill stated that 13,412 dollars, now remained due, for which the mortgaged premises were a slender security; that the mortgagees neglected to make payment, but combining with one *M. Eaton*, *J. Beach*, and others, they set up certain pretended *releases* of parts of the premises, and *receipts* of the plaintiff, which the plaintiff alleged were forged, and which were particularly described; and that under colour of these releases, *A. E.* had sold and mortgaged to the defendants various parts of the premises.

In *June*, 1811, *William Edgar*, a defendant, in his answer, stated that he lent *Amos Eaton*, in *January*, 1810, three thousand dollars, for which he took his bond, and a mortgage on part of the premises mortgaged to the plaintiff, on the advice of counsel, that the land was unincumbered; that he was entirely ignorant of the transaction stated by the plaintiff, in his bill, and insisted on the lien on that part of the premises mortgaged to him. The cause was at issue, as to *Edgar*, in *April*, 1812.

In *November*, 1811, *Edgar* filed a *cross bill*, stating his answer to the original bill, and that the plaintiff had issued an execution on his judgment, and levied on the mortgaged premises; that the *release*, from *Pendleton* to *Amos Eaton*, of all claims under the mortgaged premises, was dated the 2d of *May*, 1808, and recorded, &c. And praying, among other things, that the residue of the land not mortgaged to the plaintiff, (*E.*) and all the estate of the *Eatons*, might be sold, and first applied, &c. And that the plaintiff (*E.*) might be permitted to redeem the first mortgage,

if he thought fit, and that an injunction issue to stay all proceedings on the execution, &c.

In the answer to the *cross* bill, the defendant (*P.*) set forth his mortgage, judgment, &c. And particularly described the *forgery* of the three *releases*, for nearly the whole of the mortgaged premises ; and stated that *Amos Eaton* had been convicted of the forgery of one of the releases ; that the defendant had offered to compromise with the plaintiff, (*E.*) on his losing one half of his debt, which the plaintiff declined, &c., that he submitted to have his mortgage redeemed by the plaintiff, &c.

This answer being put at issue, voluminous evidence was taken on the part of the defendant.

Both causes came on to be heard, together, in *June* last, and a decree was made, declaring the *release* in question, false, fraudulent, and void ; that the defendant, *Edgar*, elect in twenty days, to pay the debt, and take an assignment of the mortgage, securities, &c., or that he be foreclosed of all equity of redemption, &c. *Edgar* made no election, and the question reserved, and now submitted to the court, was, who should pay the costs of either or of both suits.

*Pendleton*, in proper person.

*Baldwin* for *Edgar*.

THE CHANCELLOR, after disposing of the question of costs under a particular rule, proceeded to consider the question as to the costs of the suits at large, as follows :

*Edgar* was brought into court in the original suit, an innocent and *bona fide* mortgagee .He had no concern with a greater portion of the matter in the bill, in which nineteen other defendants were charged. He answered, by setting up his mortgage fairly taken, and denying all knowledge of any fraud in *Amos Eaton*, in procuring the releases which

appeared upon record, and which showed the land to be free from incumbrance when he took his mortgage. There can be no just ground for charging *Edgar* with costs in the original suit. He has done nothing which he had not a right to do. But he filed a cross bill; and under the circumstances of the case he was justified in doing it. After his answer to the original bill, *Pendleton* should either have dismissed it, as to him, or gone on to establish his allegations, and to make manifest his prior and better title. Instead of doing so, he resorted to his judgment at law, and proceeded to sell the very land covered by the conflicting mortgages. By this means, he drove *Edgar*, by necessity, to resort to a cross bill, and to stay the sale by injunction, until the merits of the original suit had been discussed and settled. That cross bill was not properly a bill to redeem. That was not its character or object. It was to stay the execution at law, and to insist on the validity of his claim under *Edgar's* mortgage. The great prolixity and expense of the answer to the cross bill, and of the proofs taken in the cross cause, were matters of the defendant's own seeking in that cause. The whole suit was forced upon *Edgar*, by the act of the original plaintiff, and *Edgar* ought not to be charged with the expenses of it. Suppose the original plaintiff had gone on to proof and hearing, in the original cause, and obtained the decree which he finally obtained, there would have been no equity in condemning *Edgar* in the costs of the suit. He was brought into court innocently, and he had a right to stand upon his mortgage, until the falsity of the releases was made out. The cross bill does not alter the equity of the question of costs, as it would have stood, if there had been no cross bill, for it was the act of the original plaintiff in quitting his suit after the defendant's answer, and resorting to his execution at law, that rendered *Edgar's* bill necessary.

Nor do I think that the offer mentioned in the answer

to the cross bill alters the case. *Edgar* was bound to accept of a composition, and leave the question of title and right between them undecided. That was a matter resting in his discretion, and cannot enter into the consideration of the case, as it stood upon actual litigation; and, besides, the answer being put in issue, there is no proof which I have seen of this offer.

Upon the whole, both parties are equally innocent, and have been equally straggling to avoid a loss, and I cannot, according to the course and practice of the court, punish either party with costs, as against the other.

There is another fact in this case which is important, as to the question of costs. The costs of the original plaintiff ought to be charged upon the fund which was in contest. That is the proper subject of the charge, and I have no evidence that it is not fully adequate to satisfy the plaintiff's debt, interest, and costs. The plaintiff elects to *foreclose* the equity of redemption, by which he takes the subject to himself, by a strict and technical foreclosure, instead of selling it under the direction of the court. I have no ground, then, in the absence of positive proof, for any other presumption than that the land is sufficient for all the purposes for which it ought to be charged.

Ordered, that neither party in either suit have costs, as against each other.